# CASES

## ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

JULY TERM, 1862, AT JEFFERSON CITY.

———•••———

STATE, TO USE OF ROBERT E. BEAZLEY, Defendant in Error, v.
WILLIAM W. BLUNDIN *et al.*, Plaintiffs in Error.

*Lien of Execution.*—Upon the receipt of an execution by the officer, the lien
of the writ attaches to the personal property of the defendant, and a levy
and sale will pass the title notwithstanding a transfer by the judgment
debtor made after such receipt. The lien attaches in the same manner to
property acquired by the debtor after the execution comes into the hands of
the officer. (R. C. 1855, p. 964.)

*Error to Saline Circuit Court.*

*Shackelford & Turner*, for defendant in error.

I. There was no error in giving the instructions asked for
by the plaintiff below, or in refusing those asked for by de-
fendants. Snyder being unable, on account of the lien, to
make Beazley a title to the horse first swapped to him, Beaz-
ley had a right to return the horse and take back his mule—
the consideration for which he had parted with the mule hav-
ing failed. And as, in the mean time, Snyder had swapped

off the mule, Beazley had a right to ratify the latter swap as if made by himself through his agent, and in lieu of his mule take the horse that Snyder received in exchange for the mule. The lien attached to and continued against the horse originally owned by Beazley, and not the other horse or mule. There was no evidence to warrant the first instruction asked by defendants, there being no evidence that Snyder owned the horse in controversy, apart from the swap, which did not vest such a right in him as to subject the property to the execution. The court was under no obligation to give to the jury the abstract propositions of law asserted in the other instructions asked by defendants, even if they were correct in point of law.

*W. T. Crews* and *S. Boyd*, with *Bryant*, and *Ryland & Son*, for plaintiffs in error.

I. The executions in the hands of the constable from 7th of May, 1859, the time he first received them, were a lien on all the personal property of Snyder, the defendant in the executions. (R. C. 1855, Executions, § 21, p. 741, and also p. 964, § 5, Justices' Courts, &c. See § 6.)

II. Now Beazley clearly had only Snyder's right to the horse in question, if it was ever Snyder's, while the executions were out against him in Blundin's (the constable) hands; then the horse was subject to these executions, and unless the horse belonged to Snyder before Beazley got him, he, Beazley, acquired no title to him, and could not maintain an action against the constable for selling him.

III. The executions on the judgments in Justice Harris' court, were issued and placed in Blundin's (the constable) hands on 7th May, 1859—the judgments, for various sums, amounting to two hundred and fifty dollars. These executions had some sixty, and some ninety, days to run. These executions were liens on the personal property of Snyder on 7th of May, 1859. On the 9th of May, Beazley swaps his mule to Snyder for Snyder's horse. On the 10th of same month, Beazley returns to Snyder to get his mule back, but

State, to use of Beazley, v. Blundin.

Snyder had swapped the mule for another horse, and Beazley gets this horse from Snyder by swapping back the horse to Snyder which he first got from him in the swap of his mule. Now, it is most obvious that Beazley must affirm the trade which Snyder had made with Aikman, otherwise Snyder has no title to the horse which he got of Aikman; and if Snyder had none, then Beazley got none from him. But Snyder did have title to the mule he first got of Beazley, and did afterwards have title to the horse he got from Aikman for the mule; and if, at any time during the existence of these executions he was the owner of the mule and of the horse he got for the mule from Aikman, then the executions were a lien on said mule and said horse, and the constable is not liable for seizing and selling them under said executions.

DRYDEN, Judge, delivered the opinion of the court.

This was an action brought by Beazley, in the name of the State, against Blundin and his securities on his official bond as constable of a township in Saline county. Blundin, as constable, had in his hands an execution issued by a justice of the peace against one Snyder. At the time Blundin received the execution, Snyder owned and was in possession of a horse, which, in a day or two afterwards, he swapped to Beazley for Beazley's mule. The next day, Beazley, learning there were executions in the hands of the constable against Snyder, went to Snyder to effect a rescission of the contract of the previous day; but, in the mean time, Snyder had parted with the mule in exchange for the horse of one Aikman, and thereupon Beazley exchanged with Snyder the horse he had got from the latter in the first instance for the horse which Snyder had got from Aikman. Afterwards, and while the execution was still in force, Blundin levied the same on the horse in the hands of Beazley which he last received from Snyder, and sold the same under the execution. To recover damages for levying upon and selling said horse, this suit was brought. The plaintiff recovered judgment in the Circuit Court, which the defendants are seeking to re-

verse in this court. The only point in the case arises upon the instructions.

The court instructed the jury to the effect that the horse was not subject to the execution, and refused those of the defendants taking the opposite ground. We think the property was subject to the lien of the execution, and was properly seized and sold.

" The officer receiving such execution shall endorse thereon the time of the receipt of the same; and the execution, from the time of the delivery to the constable, shall be a lien on the slaves, goods, chattels, and shares in stocks of the defendant, found within the limits within which the constable, or other public officer, can execute the process." (R. C. 1855, p. 964, § 5; Brown v. Burrus, 8 Mo. 26; Orchard v. Williamson, 6 J. J. Marshall, 558.)

The court erred in the matter of the instructions, and its judgment is therefore reversed; the other judges concurring.